UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARYANNE VILLAR,

                Plaintiff,

v.                                     Case # 19-CV-144-FPG
                                          DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## INTRODUCTION

Plaintiff MaryAnne Villar brings this action pursuant to Title II of the Social Security Act seeking review of the denial of her application for Disability Insurance Benefits ("DIB").

Plaintiff protectively applied for DIB on April 10, 2015, alleging disability based on fibromyalgia/chronic fatigue, interstitial cystitis, carpal tunnel syndrome, neck pain, right knee osteoarthritis, costochondritis, and right elbow tendonitis. Tr.[1] 173-179, 219. After the Social Security Administration ("SSA") denied her application, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 27-78. On September 19, 2017, the ALJ issued an unfavorable decision. Tr. 10-26. After the Appeals Council denied Plaintiff's request for review, the SSA's decision became final and Plaintiff appealed to this Court. Tr. 1-5; ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 10. For the following reasons, Plaintiff's motion is GRANTED,

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

the Commissioner's motion is DENIED, and this matter is REMANDED for further administrative proceedings.

## LEGAL STANDARD

### I. District Court Review

When a district court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Disability Standard

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and

work experience. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Lesterhuis v. Colvin*, 805 F.3d 83, 85 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's benefits application using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between her onset date and her date last insured. Tr. 15.

At step two, the ALJ found that Plaintiff had one severe impairment, bilateral knee osteoarthritis, as well as several other non-severe impairments. Tr. 15-16. However, the ALJ determined that Plaintiff's fibromyalgia was not a medically determinable impairment because the record did not contain the evidence required by Social Security Ruling 12-2p, 2012 SSR LEXIS 1 ("SSR 12-2p"). Tr. 16.

At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the criteria of any Listings impairment and determined that Plaintiff retained the RFC to perform sedentary work with additional restrictions. Tr. 16-18.

At step four, the ALJ found that Plaintiff could perform her past relevant work, and at step five, the ALJ found that Plaintiff could also adjust to other work that exists in significant numbers in the national economy. Tr. 18-20. Accordingly, the ALJ found that Plaintiff was not disabled during the period of time between her onset date and date last insured. Tr. 21.

### II. Analysis

On appeal, Plaintiff argues that the ALJ erroneously concluded that her fibromyalgia was not a medically determinable impairment without seeking additional information from Plaintiff's treating physicians. The Court agrees.

3

SSR 12-2p sets forth the criteria for establishing fibromyalgia as a medically determinable impairment: (1) a physician must have diagnosed fibromyalgia, (2) the physician must have provided evidence described by either the 1990 American College of Rheumatology ("ACR") criteria or the 2010 ACR Preliminary Diagnostic Criteria; and (3) the physician's diagnosis must not be inconsistent with other evidence in the record. *Monique Danielle W. v. Comm'r of Soc. Sec.*, No. 5:18-CV-184, 2019 U.S. Dist. LEXIS 93032, at *10 (N.D.N.Y. June 4, 2019) (citing SSR 12-2p).

> Under the 1990 ACR criteria, a person must show: (1) "[a] history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back—that has persisted (or that persisted) for at least 3 months," though the pain "may fluctuate in intensity and may not always be present"; (2) "[a]t least 11 positive tender points on physical examination," provided these points are "found bilaterally" and "both above and below the waist"; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded."
>
> Alternatively, under the 2010 ACR criteria a person must show: (1) "[a] history of widespread pain" as defined above; (2) "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome" and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded."

*Id.* (citing SSR 12-2p).

Here, the ALJ acknowledged that Plaintiff had been diagnosed and treated for fibromyalgia but found that it was not a medically determinable impairment because the record lacked evidence of at least 11 tender points under the first set of criteria, or repeated manifestations of six or more fibromyalgia signs or symptoms under the second set of criteria. Tr. 16.

Plaintiff points out that the record is not clear on this issue and argues that the ALJ should have recontacted Plaintiff's treating physicians or consultative examiners for clarification.

4

First, in May 2015, consultative examiner Donna Miller, D.O., diagnosed Plaintiff with fibromyalgia and found that she had trigger points in her neck, shoulders, and left elbow, but Dr. Miller did not specify how many trigger points there were. Tr. 364.

Second, contrary to the ALJ's finding that there was no evidence of repeated manifestations of six or more fibromyalgia symptoms or signs, the record contained reports of muscle pain, abdominal pain, urinary frequency, fatigue and exhaustion, weakness, numbness, chest pain, and shortness of breath, all of which count as fibromyalgia signs or symptoms. Tr. 41, 269-278, 286, 332, 364, 395, 398-410, 417,421, 439, 442, 497, 514-516; *see* SSR 12-2p, 2012 SSR LEXIS 1, *8 n.9.

Third, between 2014 and 2015, Plaintiff's treating physician since 1998, Daniel Zorich, M.D., repeatedly noted Plaintiff's diagnosis of fibromyalgia, but the first records from Dr. Zorich are from 2014 and do not contain Plaintiff's initial diagnosis or the objective tests and indicators that resulted in the diagnosis. Tr. 208, 328, 332, 420, 431, 442, 445-46, 499.

Fourth, Plaintiff's other treating sources reported her diagnosis of fibromyalgia. In January 2014, orthopedic surgeon William Wind, M.D., indicated that Plaintiff "has a diagnosis of fibromyalgia." Tr. 337. In April 2014, preoperative cardiologist Marie Iacona, M.D., noted that Plaintiff had sporadic chest pain attributed to her fibromyalgia. Tr. 399. Between September and December 2015, Chiropractor Shawn R. Haseley, D.C, noted fibromyalgia, pain, and tenderness. Tr. 468. In May 2016, orthopedist Timothy McGrath, M.D., indicated that Plaintiff's health problems included fibromatosis, malaise and fatigue. Tr. 472. Following examination in September 2016, neurologist Sandra Sauvageu, M.D., assessed fibromyalgia. Tr. 548. Finally, in May 2017, neurosurgeon Michael Stoffman, M.D., referenced the fact that the Plaintiff has had pain for years and diagnosed her with fibromyalgia and chronic fatigue syndrome. Tr. 585. There

5

is no indication in the evidence of record that any of the Plaintiff's treating sources disagreed or questioned the diagnosis of fibromyalgia.

Plaintiff argues that, light of this evidence, the ALJ should have recontacted her medical sources to seek clarification about whether her fibromyalgia diagnosis meets the SSR 12-2p criteria. The Commissioner ignores this argument and instead argues that any error was harmless because the ALJ considered Plaintiff's fibromyalgia in determining her RFC. *See Reices-Colon v. Astrue*, 523 Fed. App'x 796, 798 (2d Cir. 2013) (summary order). The Court disagrees.

At the beginning of her step four analysis, the ALJ did mention Plaintiff's fibromyalgia and complaints of pain, weakness, fatigue, stiffness, numbness, and difficulty performing physical tasks such as standing, walking, bending, lifting, and sitting. Tr. 17. But the ALJ's discussion of Plaintiff's fibromyalgia or its symptoms ended there. Afterwards, the ALJ only discussed evidence relating to Plaintiff's right knee impairment. Tr. 17-18. The Court is not persuaded that the ALJ considered Plaintiff's fibromyalgia in determining her RFC.

The Court agrees with Plaintiff that the ALJ should have recontacted her providers to seek clarification regarding the trigger points. "[SSR 12-2p] directs an ALJ to take additional steps, such as recontacting the claimant's treating physicians, when the record lacks adequate information to determine whether the claimant has a medically determinable impairment of fibromyalgia." *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058-MJR, 2019 U.S. Dist. LEXIS 38691, at *11 (W.D.N.Y. Mar. 11, 2019). Accordingly, the ALJ here should have recontacted Plaintiff's treating providers to obtain additional information to help her determine whether the fibromyalgia criteria were satisfied. *Monique Danielle W.*, 2019 U.S. Dist. LEXIS 93032, at *15-16. The Court therefore finds that the ALJ erred at step two. *See Szefler v. Berryhill*, No. 16-CV-774, 2018 U.S. Dist. LEXIS 217390, at *17 (W.D.N.Y. Dec. 28, 2018) (remanding because the

6

ALJ could not have disposed of plaintiff's fibromyalgia claim based on her physician's failure to evaluate her according to the SSA's criteria without first asking the physician to do so); *Alianell v. Colvin*, No. 6:15-CV-06036 (MAT), 2016 U.S. Dist. LEXIS 14296, at *16 (W.D.N.Y. Feb. 5, 2016) (holding that the ALJ failed to follow SSR 12-2p and remanding where ALJ rejected opinion of fibromyalgia because of absence of evidence regarding trigger points).

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 9, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court